**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2999
_____

TYRONE WILLIAMS,
                        Appellant

v.

SUPERINTENDENT MAHANOY SCI;
THE ATTORNEY GENERAL OF THE STATE OF
PENNSYLVANIA;
THE DISTRICT ATTORNEY DAUPHIN COUNTY
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3-18-cv-01004)
District Judge: Hon. Malachy E. Mannion

Argued: September 21, 2021
_____

Before: JORDAN, PORTER, and RENDELL,
*Circuit Judges*.

(Filed: August 18, 2022)

Craig M. Cooley **[ARGUED]**
Cooley Law Office
1308 Plumdale Court
Pittsburgh, PA 15239

*Counsel for Appellant*

Ryan H. Lysaght **[ARGUED]**
Dauphin County Office of District Attorney
101 Market Street
Harrisburg, PA 17101

Ronald Eisenberg
Office of Attorney General of Pennsylvania
1600 Arch Street
Suite 300
Philadelphia, PA 19103

*Counsel for Appellees*

_____

OPINION OF THE COURT
_____


PORTER, *Circuit Judge.*

Tyrone Lamont Williams, a state convict, seeks federal habeas relief. He claims his trial attorney was unconstitutionally negligent for failing to call a witness and raise self-defense arguments. But his trial attorney's alleged negligence is not self-evident, as his trial attorney may have reasonably thought that self-defense arguments would detract from an alibi

2

defense. To show his trial attorney was negligent, Williams would need to develop the record in District Court. But the Antiterrorism and Effective Death Penalty Act of 1996 forbids federal courts from supplementing the record developed in state court except in narrow circumstances not relevant here. *See* 28 U.S.C. § 2254(e)(2). Williams has not carried his burden of proof and may not develop the record on remand, so we will affirm the District Court's denial of his petition.

## I

### A

Brandon Granthon was shot dead after midnight on a street corner in Harrisburg, Pennsylvania. When police arrived, they found Granthon dressed in black, with a 0.40 caliber handgun next to him, and eight grams of crack cocaine in his pocket. Police found two kinds of bullet casings nearby: nine spent 0.45 caliber casings and one 0.40 caliber casing. The handgun next to Granthon was jammed, with three bullets left in the magazine. Granthon was killed by a 0.45 caliber round fired from a different gun.

#### 1

Granthon, it turns out, was shot over a few missing grams of crack cocaine. The events that led to Granthon's death began a day earlier, when he bought an ounce of crack cocaine from Ronald Burton through a middleman, Preston Burgess. Granthon thought the bag felt light, and later confirmed "he was short a couple grams." J.A. 282 (Tr. 140). Dissatisfied, Granthon asked Burgess to orchestrate a refund exchange later that night in Burgess's house.

3

The refund did not go smoothly. Granthon showed up at the house dressed in black, looking "nervous." J.A. 282 (Tr. 141). Burton did not show up, so Granthon left. That is when Williams, the petitioner here, unexpectedly arrived at Burgess's house, followed some moments later by Burton. Burgess called Granthon to reschedule the refund, and Burton and Granthon agreed to complete the refund by themselves outside a local bar—three blocks from the corner where Granthon was shot dead. Burton left the house with Williams. Ten minutes later, Burgess heard several gunshots fired.

2

Jeffrey Lynch and Greta McAllister were smoking crack cocaine in an alley near the crime scene that night. They saw a dark SUV parked in the alley and watched two hooded men get out. The men were both carrying guns. Lynch recognized one of the men as Burton, one of his drug dealers. But he could not see the other man's face.

Burton and the other hooded man hid behind a car and a telephone pole. One of them then said, "there he go," and ducked as Granthon walked on the opposite side of the street in the direction of the bar. J.A. 290 (Tr. 172). Burton and his hooded accomplice ran across the street. Lynch heard—but did not see—about ten gunshots fired. A former marine, Lynch claims he heard two types of gunshots, one louder than the other, suggesting two calibers. Moments later, he saw Burton and the other hooded man run down the alley and drive off in the SUV.

B

The Commonwealth of Pennsylvania charged Burton with first-degree murder and various other criminal offenses. The evidence linking Burton to the homicide was overwhelming. Apart from Lynch's testimony identifying Burton as one of the hooded men, Burton's cellphone log showed he called Granthon moments before the shooting. At the time of the call, cell tower records placed Burton within one-half to two miles of the crime scene.

Lacking any plausible alibi defense, Burton's trial attorney argued that Granthon fired first, presenting theories of self-defense, defense of others, and imperfect self-defense voluntary manslaughter during the trial. 18 Pa. Cons. Stat. Ann. §§ 505, 506, 2503(b).

Georgio Rochon was an important defense witness in Burton's trial. Rochon testified that he was playing video-games in a house nearby when he heard two shots. He approached a window and saw a man shoot four times while running across the street. The first two shots he heard sounded "just like a pop-pop," and the four louder shots that followed "were more of a bang-bang." Appellee's Suppl. Br. 11.[1] According to Burton, Rochon's testimony—pop-pop, followed by

---

[1] We assume, without deciding, that we may consider Rochon's testimony, even though it was never introduced in state court or District Court. No one objected when we requested it, and in any event, Rochon's testimony is quoted in noticeable judicial decisions.

5

bang-bang—suggested that Granthon fired the smaller caliber gun first, and Burton fired back.[2]

The trial court instructed the jury on self-defense but refused to instruct the jury on defense of others or imperfect self-defense voluntary manslaughter. The jury convicted Burton of first-degree murder and several other crimes, and he was sentenced to life in prison.

On appeal, the Superior Court of Pennsylvania vacated Burton's murder conviction, finding error in the trial court's refusal to instruct the jury on defense of others and voluntary manslaughter. *Commonwealth v. Burton*, 43 A.3d 524 (Pa. Super. Ct. 2012) (unpublished table decision). Viewing the facts in the light most favorable to Burton, the Superior Court acknowledged that "this issue presents a very close question," but it ultimately concluded that the evidence could have supported a finding of defense of others as well as voluntary manslaughter, relying in part on Rochon's testimony. J.A. 209 & n.7. The Commonwealth did not retry Burton, and the trial court resentenced Burton for his remaining convictions "to an aggregate term of incarceration of not less than twenty-two and one-half nor more than forty-five years." *Commonwealth v. Burton*, No. 1873 MDA 2016, 2017 WL 3172598, at *2 (Pa. Super. Ct. July 26, 2017).

---

[2] Lynch, by contrast, testified in Williams's later trial that he "couldn't tell" whether the sounds came in any order. App. 298 (Tr. 203).

6

## C

Williams was up next. He was charged with first-degree murder, conspiracy, and reckless endangerment of another.[3] The Commonwealth largely recycled the evidence it had presented during Burton's trial. But the evidence linking Williams to the crime was weaker. Although Lynch knew Williams from prior drug deals, he did not recognize Williams that night. No one recognized Williams as one of the hooded men, and no cell phone records placed him near the scene that night. Williams, for his part, told police he was not there. He claimed he spent the night at a casino, but he offered conflicting alibi stories to police detectives, and he never used his casino rewards card that night.

Williams's trial lawyer's "defense theory" was that Williams was "not placed at the scene." J.A. 338 (Tr. 365). He did not call Rochon to testify at trial, nor did he make the case for self-defense or voluntary manslaughter. Williams's trial counsel did seek an instruction of voluntary manslaughter during a sidebar before closing arguments, but the trial judge denied his belated request for lack of supporting evidence.

Williams's alibi defense did not work out. Williams was convicted of first-degree murder, conspiracy, and reckless endangerment of another. He was sentenced to life in prison. Williams appealed, and the Superior Court affirmed. *See Commonwealth v. Williams*, No. 1682 MDA 2012, 2014 WL 10803011, at *13–17 (Pa. Super. Ct. Aug. 12, 2014). Williams's conviction became final after he failed to seek discretionary review

---

[3] He was also charged with unlicensed carrying of a firearm, but that charge was dropped during trial.

from the Pennsylvania Supreme Court. *See* Pa. R. App. P. 1113(a).

## D

Within a year, Williams sought post-conviction relief in Pennsylvania state court. His post-conviction counsel raised a single ineffective-assistance claim: he argued that his trial counsel was ineffective because he failed to call Williams's niece, Quanisha Williams, as an alibi witness. The post-conviction court held an evidentiary hearing on the matter. Both Quanisha and Williams testified that Williams's trial counsel ignored their pleas to have Quanisha take the stand as an alibi witness. On the other hand, Williams's trial counsel testified he had no recollection of Quanisha and no records documenting her existence or interest in being an alibi witness. Williams also never mentioned his niece Quanisha in either of his contradictory statements to police detectives. And as Williams's trial counsel pointed out, even if Quanisha had come forth during the trial, introducing her as an alibi witness "would have presented a third version of events," further undercutting Williams's credibility. J.A. 186.

Pennsylvania's state courts rejected this ineffective-assistance claim on the merits. *See Commonwealth v. Williams*, No. 249 MDA 2016, 2016 WL 6901354 (Pa. Super. Ct. Nov. 23, 2016).

## E

Williams timely filed this federal habeas petition, now represented by his current attorney. Williams's new counsel presented a different ineffective-assistance claim: he argued Williams's trial counsel was ineffective for failing to present a

8

self-defense or voluntary manslaughter theory and for failing to have Rochon testify.

The District Court denied the habeas petition. *Williams v. DelBalso*, No. CV 3:18-1004, 2020 WL 5217088, at \*13 (M.D. Pa. Aug. 31, 2020). Relying on a five-factor test derived from a Supreme Court of Pennsylvania decision, the District Court held that Williams's new ineffective-assistance claim lacked merit because "[t]here simply is no evidence that Rochon was available or willing to testify at Williams' trial." *Id.* at \*7 (relying on *Commonwealth v. Clark*, 961 A.2d 80, 90 (Pa. 2008)). This appeal followed.

II

The District Court had jurisdiction under 28 U.S.C. § 2254. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253. The petition was timely filed under 28 U.S.C. § 2244(d). "Because the District Court did not hold an evidentiary hearing and relied on the state court record, we exercise plenary review." *Robinson v. Beard*, 762 F.3d 316, 323 (3d Cir. 2014).

III

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The right to counsel includes "the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). But "there is no right to counsel in state collateral proceedings," including state post-conviction proceedings. *Coleman v. Thompson*, 501 U.S. 722, 755 (1991); *see also Shinn v. Ramirez*, 142 S. Ct. 1718, 1737 (2022) ("[W]e have

repeatedly reaffirmed that there is no constitutional right to counsel in state postconviction proceedings.").

There is a time and place for state convicts to raise their right to effective trial counsel. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and related judicial doctrines prescribe those times and places. State prisoners must first raise their federal claims in state court. 28 U.S.C. § 2254(b)(1)(A). "State prisoners, however, often fail to raise their federal claims in compliance with state procedures, or even raise those claims in state court at all." *Shinn*, 142 S. Ct. at 1732. When that happens, state procedural law usually considers those arguments "waived"—meaning they can no longer be raised. *See, e.g.*, 42 Pa. Cons. Stat. Ann. § 9544(b) ("[A]n issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding."). "In these cases, the state judgment rests on independent and adequate state procedural grounds," not a misunderstanding of federal constitutional rights. *Coleman*, 501 U.S. at 730. For that reason, and to preserve AEDPA's exhaustion requirement, "federal courts generally decline to hear any federal claim that was not presented to the state courts consistent with the [State's] own procedural rules." *Shinn*, 142 S. Ct. at 1732 (quotation marks omitted).

But there are exceptions. "When a claim is procedurally defaulted, a federal court can forgive the default and adjudicate the claim if the prisoner provides an adequate excuse." *Id*. One common excuse for procedural default is based on the equitable rule first announced in *Martinez v. Ryan*, 566 U.S. 1 (2012). Under that equitable rule, when a prisoner's state post-conviction lawyer was negligent for failing to raise an ineffective-assistance claim that "has 'some merit,'" we may hear the claim,

even though the prisoner never raised it in state court. *Work-man v. Superintendent Albion SCI*, 915 F.3d 928, 937 (3d Cir. 2019) (quoting *Martinez*, 566 U.S. at 14).

Williams never raised his current ineffective-assistance claim in state court, so he "waived" his argument. *See* 42 Pa. Cons. Stat. Ann. § 9544(b). Williams argues that *Martinez* excuses his default. Maybe so, but we need not dwell on this issue. For even if we excused Williams's failure to raise his ineffective-assistance claim in state court, "[t]here is an even higher bar for excusing a prisoner's failure to develop the state-court record." *Shinn*, 142 S. Ct. at 1733. AEDPA does not allow us to excuse Williams's separate failure to develop the record just because his state post-conviction lawyer did a bad job. *Id.* at 1737. We are therefore limited to the facts developed in state court. And on a closed state record, Williams cannot show his trial counsel was ineffective.

A

Before explaining why Williams's ineffective-assistance claim fails, we pause to address the District Court's holding. According to the District Court, to succeed on his ineffective-assistance claim, Williams bears the burden of showing that Rochon was willing to testify at Williams's trial. The District Court derived this requirement not from federal law, but from a Supreme Court of Pennsylvania decision setting forth a five-factor test of uncertain origin. Under that test, Pennsylvania courts generally require a defendant to show that:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for

11

> the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Clark*, 961 A.2d at 90. The dispute here is about the fourth requirement—showing a witness's willingness to testify. The Commonwealth argues that this requirement aligns with *Strickland* and urges us to apply it here. We decline to do so. As we have said before, and reiterate once again, "[a]bsent extenuating circumstances, such as the existence of a privilege or the witness's incapacity or death, whether a witness is ready and willing to testify is irrelevant since defense counsel can compel testimony through a trial subpoena." *Grant v. Lockett*, 709 F.3d 224, 239 n.10 (3d Cir. 2013). Compulsory process, after all, is guaranteed in criminal trials by the Sixth and Fourteenth Amendments. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987) ("Our cases establish, at a minimum, that criminal defendants have the right to the government's assistance in compelling the attendance of favorable witnesses at trial . . . ."). Unwilling witnesses can be *made* to testify.[4]

The Commonwealth, though, argues we should superimpose Pennsylvania's requirement on *Strickland* because, "at least in Dauphin County," witnesses often perjure themselves

---

[4] We have sometimes examined a state court's finding that a witness would have been unwilling to testify, as if it mattered. *See Rolan v. Vaughn*, 445 F.3d 671, 681 (3d Cir. 2006). Today, we make clear that, absent a testimonial privilege, willingness to testify does not matter.

or disobey court subpoenas under threat of contempt.[5] Maybe so. But we presume, sensibly, that witnesses prefer to cooperate and tell the truth than risk going to jail. *Cf. Commonwealth v. Long*, 625 A.2d 630, 633 (Pa. 1993) ("An individual may be found in contempt for refusing to testify after being ordered to do so by the court.").

In any event, the Commonwealth's concerns ring hollow here, and we see no relevant extenuating circumstances. Rochon testified in Burton's trial, so there is no reason to think he would go rogue in Williams's nearly identical trial. Moreover, if Rochon had died, disappeared, or refused to testify, Williams's trial counsel could have introduced Rochon's prior sworn testimony instead. Pa. R. Evid. 804(a)(2), (5); *id.* 804(b)(1). And if Rochon perjured himself by offering a different version of events, Williams could have used his prior testimony and police statement to impeach him. Either way, Williams's trial counsel had the tools to elicit Rochon's original version of events, even in Dauphin County.

Williams need not prove that Rochon would have been a willing witness. We reject Pennsylvania's contrary rule. Williams, to be sure, must show that his trial counsel should have known about Rochon as part of his showing of negligence. But given that the trial took place after Burton's victory on appeal, and given Rochon's recorded statements to police, we have little difficulty concluding that a competent trial attorney should have known about Rochon.

---

[5] Oral Argument at 27:56–28:05, https://www2.ca3. uscourts.gov/oralargument/audio/20-2999TyroneWilliams v.SuperintendentMahanoySCI.mp3.

B

We will affirm on a different ground, in two steps. First, AEDPA forbids the District Court from developing the facts relevant to the merits of his ineffective-assistance claim in federal court. Second, Williams cannot carry his burden of proof on the state court record. As a result, we must affirm the District Court's denial of Williams's federal habeas petition.

1

We start with AEDPA. To ensure federal habeas relief does not become a substitute for ordinary error correction, "AEDPA imposes several limits on habeas relief." *Shinn*, 142 S. Ct. at 1731. AEDPA, as relevant here, requires federal courts to review a state court's "determination of a factual issue" with deference. 28 U.S.C. § 2254(e)(1). This restriction would mean little, however, if state prisoners could avoid AEDPA's "highly deferential standard of review" by failing to develop the record in state court. *Shinn*, 142 S. Ct. at 1739–40. Section 2254(e)(2) prevents that evasion. It says, in full:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> (A) the claim relies on—
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). Williams does not argue that he meets the narrow exceptions listed in subparagraphs (A) and (B), and he does not. Instead, Williams argues that AEDPA's prohibition does not apply. He makes plausible arguments, but recent Supreme Court precedent compels us to reject them.

a.

Before discussing Williams's specific arguments, we provide legal background. We have interpreted 2254(e)(2) on several occasions. In *Cristin v. Brennan*, we concluded "that the plain meaning of § 2254(e)(2)'s introductory language does not preclude federal hearings on excuses for procedural default at the state level." 281 F.3d 404, 413 (3d Cir. 2002); *see also id.* at 419 ("§ 2254(e)(2)'s restrictions do not apply to hearings on procedural default . . ."). We reached that conclusion for two principal reasons. First, we reasoned that a hearing used to support an excuse for a procedural default—like a *Martinez* hearing—is not a hearing on "a claim" under AEDPA, because it is not a claim for relief on the merits. *Id.* at 417–18. Second, we reasoned that state prisoners "cannot be faulted . . . for not having previously presented the facts underlying arguments that would have been, on the whole, irrelevant or premature before state courts." *Id.* at 417; *see also id.* at 416

15

("Indeed, it would be surpassing strange to require Cristin to establish a record in state court about why he is not appealing a particular judgment while simultaneously failing to appeal that judgment."). We noted, however, that "a rare case could exist when a petitioner relies solely on ineffective assistance of counsel to establish both cause and prejudice and as a claim for substantive habeas relief." *Id.* at 416 n.11. In such a case, we thought, perhaps the prisoner may have an adequate opportunity to develop the facts in state court. *Id.*

After *Cristin*, the Supreme Court decided *Martinez*. In the aftermath of *Martinez*, it is no longer "rare" for state prisoners to rely on ineffective assistance of trial counsel both to excuse a procedural default (under *Martinez*'s "some merit" prong) and to obtain relief on the merits.

Relying on *Cristin* and *Martinez*, Williams makes two principal arguments. First, asking us to extend *Martinez*'s logic to AEDPA, Williams argues that prisoners should not be at fault for failing to develop the record when their state post-conviction counsel was negligent. After all, *Martinez* excuses a prisoner's failure to raise an ineffective-assistance claim altogether. Given that, why should a prisoner be blamed under AEDPA for his attorney's similarly negligent failure to develop the facts? Second, by following *Cristin*'s holding that AEDPA does not forbid hearings on excuses for procedural default, Williams suggests the District Court could still a hold *Martinez* hearing. And going one step further than *Cristin*, Williams suggests that once the *Martinez* evidence is part of the federal record on habeas review, the District Court could rely on the new evidence to evaluate the merits of the underlying ineffective-assistance claim.

Williams's arguments were debatable when he made them. But no longer. After oral argument, the Supreme Court decided *Shinn v. Ramirez*. *Shinn* thoroughly rejected these arguments. Under AEDPA, "a state prisoner is responsible for counsel's negligent failure to develop the state postconviction record." 142 S. Ct. at 1735. Or, in AEDPA's terms, a prisoner fails "to develop the factual basis of a claim" even when his state post-conviction attorney was negligent. *Martinez* does not excuse a prisoner's *separate* failure to develop the facts under AEDPA, for the simple reason that judge-made equitable rules cannot claim supremacy over statutory text. *Id.* at 1736. It follows, then, that when a state post-conviction attorney negligently fails to develop the facts needed to support a claim, "a federal court may order an evidentiary hearing or otherwise expand the state-court record only if the prisoner can satisfy § 2254(e)(2)'s stringent requirements." *Id.* at 1735. Nor may federal courts "end-run" AEDPA by holding hearings on an excuse for procedural default, and then using the expanded federal record to decide the merits of a habeas claim. *Id.* at 1738. Rather, "when a federal habeas court convenes an evidentiary hearing for any purpose, or otherwise admits or reviews new evidence for any purpose, it may not consider that evidence on the merits of a negligent prisoner's defaulted claim unless the exceptions in § 2254(e)(2) are satisfied." *Id*. While this makes *Martinez* a dead letter in many cases, "that is a reason to dispense with *Martinez* hearings altogether, not to set § 2254(e)(2) aside." *Id.* at 1738–39.

After *Shinn*, *Cristin* and *Martinez* do not help Williams. Williams, through his attorney, had a chance to develop the facts needed to support his current claim in state court. He elected instead to litigate a different claim that was rejected on the merits, and so he failed to develop the record to support his

17

new claim. While *Martinez* may give him a second chance, AEDPA does not. And even if our precedent in *Cristin* would allow a *Martinez* hearing, the District Court may not use the expanded record to decide the merits of Williams's ineffective-assistance claim, so a *Martinez* hearing would be a waste of time unless Williams can prevail on the state record.

*Cristin*, to be sure, remains the law of the circuit to the extent it is consistent with *Shinn*. While *Shinn* suggests that "[t]here are good reasons to doubt" our reading of the word "claim" in *Cristin*, it does not abrogate our holding that, generally, AEDPA's text does not forbid federal courts from developing the facts needed to excuse a procedural default. *Id.* at 1738. But *Shinn* does set limits on *Cristin*'s reach. *Shinn* makes clear that, when a prisoner is at fault for failing to develop the record needed to support a constitutional claim on the merits in state court and cannot satisfy section 2254(e)(2)'s exceptions, federal courts may not consider evidence first gathered during an excuse hearing allowed by *Cristin* to decide the constitutional claim on the merits. *Id.* at 1738. To avoid prolonging federal habeas proceedings, *Shinn* also instructs that in these cases, federal courts must skip hearings altogether and deny habeas relief unless the prisoner prevails on the merits considering only the state court record. *Id.* at 1739. So before holding a *Martinez* hearing, as allowed by *Cristin*, federal courts in these cases should decide whether an underlying ineffectiveness claim succeeds considering only the state court record. If not, federal courts should deny relief without more. With those limitations, *Cristin* remains binding in this circuit.

b.

Williams next argues that AEDPA's prohibition is limited to formal evidentiary hearings. The statute's plain

18

language, after all, is limited to an "evidentiary hearing." 28 U.S.C. § 2254(e)(2). It does not, for example, speak directly to depositions or other means of civil discovery used to expand the state record. In this view, the District Court may expand the state court record through far-reaching civil discovery so long as it does not call a formal evidentiary hearing.

Supreme Court precedent forecloses this reading of the statute. *See Holland v. Jackson*, 542 U.S. 649, 653 (2004) (per curiam) (AEDPA's "restrictions apply *a fortiori* when a prisoner seeks relief based on new evidence *without* an evidentiary hearing."); *Shinn*, 142 S. Ct. at 1738 (reaffirming *Holland*). The reason for that is straightforward: a literal reading of evidentiary hearing "would have countenanced an end-run around the statute. Federal habeas courts could have accepted any new evidence so long as they avoided labeling their intake of the evidence as a 'hearing.'" *Shinn*, 142 S. Ct. at 1738. While reasonable minds may disagree with this reading, Supreme Court precedent is binding, and we follow it here.

\*     \*     \*

Williams failed to develop the facts supporting his new merits claim in state court. Under AEDPA, he may not do so in federal court, through an evidentiary hearing or otherwise. We must consider his ineffective-assistance claim on a closed state record.[6]

---

[6] We "typically remand for the District Court to consider" ineffective-assistance claims "in the first instance," particularly when "an evidentiary hearing may be necessary to determine whether trial counsel was ineffective." *Preston v. Superintendent Graterford SCI*, 902 F.3d 365, 378 n.14 (3d Cir. 2018).

Williams argues that we may conclude his trial attorney was ineffective even on a closed state record. We disagree.

"Under *Strickland*, a defendant who claims ineffective assistance of counsel must prove (1) 'that counsel's representation fell below an objective standard of reasonableness,' and (2) that any such deficiency was 'prejudicial to the defense.'" *Garza v. Idaho*, 139 S. Ct. 738, 744 (2019) (citations omitted) (quoting *Strickland*, 466 U.S. at 687–88, 692). "Judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. We must "eliminate the distorting effects of hindsight" and recognize that "[t]here are countless ways to provide effective assistance in any given case." *Id.*

"When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003). While the Commonwealth has "not provided any strategic explanation for trial counsel's failure" to present a self-defense argument, it is not difficult "to identify one." *Preston v. Superintendent Graterford SCI*, 902 F.3d 365, 382 (3d Cir. 2018) (concluding that trial counsel's performance was deficient when neither the court nor the Commonwealth identified an explanation for counsel's failure to raise an issue at trial). Presenting a self-defense theory would risk undercutting Williams's alibi defense. *See Lewis v. Horn*, 581 F.3d 92, 108 (3d Cir. 2009) ("Nor can we conclude that Lewis has demonstrated that his counsel performed

---

No evidentiary hearing is available, and the issues are fully briefed, so there is no need for a remand.

unreasonably by failing to present a theory of self defense in addition to, or instead of, the alibi defense."). Williams's trial counsel could have argued in the alternative, but arguing in the alternative to a jury is not always the best idea. Good trial lawyers often choose to make one consistent argument to a jury rather than two "factually inconsistent" arguments at the risk of undercutting their story's credibility. *See id.*[7]

Williams points out that Burton succeeded where he failed because Burton's trial counsel raised a self-defense theory and presented Rochon's testimony, while Williams's trial counsel did not. But Burton and Williams were not in the same boat. The evidence linking Burton to the homicide was overwhelming. The evidence linking Williams to the homicide less so. For that reason, Williams's trial counsel faced a strategic dilemma that Burton's counsel did not. Burton's counsel had only one reasonable choice. Williams's trial counsel had to choose between arguing innocence, self-defense, or trying to do both at the same time.

Either way, Williams's trial counsel had no great options. An alibi defense was risky given Williams's weak alibi, but the reward of success could be great. As the judge put it to the jury, if Williams "was not there and [was] not involved in any way, shape, or form then obviously he can't be guilty of anything." J.A. 338 (Tr. 365). Relying on an alibi defense was not inherently unreasonable, as the evidence placing Williams

---

[7] We note, also, that calling Rochon could have directly undermined Williams's alibi if Rochon recognized Williams as the man he saw when he approached the window.

21

at the crime scene as one of the hooded men was circumstantial and required an inferential leap.

On the other hand, an argument of self-defense or voluntary manslaughter was also an uphill climb. Lynch testified that the hooded men ambushed Granthon with guns as he walked toward the bar, amply supporting a first-degree murder conviction no matter who fired first. Under Pennsylvania law, a killing by "lying in wait" is murder in the first degree. 18 Pa. Cons. Stat. Ann. § 2502(a), (d). And deadly force is not justifiable when the killer, "with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter." *Id.* § 505(b)(2)(i). Given Lynch's testimony, the likelihood of a successful self-defense argument was slim. And while a successful self-defense argument would acquit Williams, an imperfect-self-defense conviction is still "a felony of the first degree," and carries up to twenty years in prison. *Id.* §§ 1103(1), 2503(c).

Burton's success on appeal does not suggest otherwise. As the Superior Court's ruling in *Burton* suggests, *when the facts are viewed in the light most favorable to Burton*, a reasonable jury could have found self-defense or voluntary manslaughter. But even under that generous standard, the court thought it was "a very close question." J.A. 209 n.7. Trial counsel cannot be blamed for thinking a jury may not have viewed the facts supporting self-defense in the light most favorable to Williams, or for not making an argument that was barely reasonable enough for a jury instruction. A self-defense argument was no cakewalk, so we cannot say it was inherently unreasonable to focus on an alibi defense to the exclusion of self-defense. This case therefore falls within the strong presumption of reasonableness.

The presumption may be overcome with case-specific evidence of negligence. For example, if the evidence showed that Williams's trial attorney never heard of Rochon, or that he meant to have Rochon testify and forgot, that failure from "inattention, not reasoned strategic judgment," would likely fall below an objective standard of reasonableness. *Wiggins v. Smith*, 539 U.S. 510, 526 (2003). But here, we have no specific evidence of negligence in the state record, and "the absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Dunn v. Reeves*, 141 S. Ct. 2405, 2407 (2021) (per curiam). We have no trial counsel testimony on the relevant issue. The best evidence we have is that Williams's trial counsel requested a voluntary manslaughter instruction before closing arguments, without supporting that instruction request with Rochon's testimony. Perhaps that suggests that by the end of trial, Williams's attorney had second thoughts about making a self-defense argument to the jury. But that does not mean that his initial choices in presenting evidence during trial—including not calling Rochon—resulted from negligence, not a tactical decision. While that isolated request lends some circumstantial support to Williams's ineffective-assistance claim, it cannot overcome the strong presumption of reasonableness.

* * *

We will affirm the District Court's denial of Williams's petition.

23