**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2134
_____

ERIC LUNSFORD,
Appellant

v.

ADMINISTRATOR NEW JERSEY STATE PRISON; ATTORNEY GENERAL NEW
JERSEY
_____

On Appeal from the United States District Court
For the District of New Jersey
(D.C. No. 2-18-cv-08039)
District Judge: Honorable Susan D. Wigenton
_____

Argued on May 20, 2024


Before: RESTREPO, FREEMAN, and McKEE, *Circuit Judges*

(Opinion filed: July 10, 2024)

Stefanie A. Tubbs **[Argued]**
Faegre Drinker Biddle & Reath
One Logan Square
Suite 2000
Philadelphia, PA 19103

Katherine Unger Davis
James Figorski
Dechert

2929 Arch Street
18th Floor, Cira Centre
Philadelphia, PA 19104

Kaitlyn P. Marasi
Dechert
1900 K Street NW
Washington, D.C. 20006
        *Counsel for Appellant*

Matthew J. Platkin, Attorney General
William P. Cooper-Daub, Deputy Attorney General **[Argued]**
Valeria Dominguez
Carol M. Henderson
Office of Attorney General of New Jersey
Division of Criminal Justice
25 Market Street
Richard J. Hughes Justice Complex
Trenton, NJ 08625
        *Counsel for Appellees*

_____

OPINION[*]
_____


McKEE, *Circuit Judge.*

Eric Lunsford seeks habeas relief. He was convicted in state court of

manslaughter, aggravated assault and unlawful weapons possession. The only evidence

tying him to the crimes, however, was an out-of-court photo array identification and a

subsequent in-court identification by a problematic eyewitness, Derrick Keitt. Lunsford

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

argues that the identifications should have been suppressed under the Due Process Clause and that his trial counsel was ineffective for failing to move to suppress them.

The difficulty with Lunsford's claim, however, is that the identifications' shortcomings are not attributable to state action. Under the Supreme Court's decision in *Perry v. New Hampshire*,[1] eyewitness identifications are suppressible under the Due Process Clause only when they are obtained through improper *governmental* conduct. While we agree with Lunsford that there are many reasons to doubt the reliability of Keitt's identifications,[2] that does not mean there is a basis for federal habeas relief. That is particularly true given the deferential standard of review required under the Antiterrorism and Effective Death Penalty Act ("AEDPA").[3]  Accordingly, we must affirm the District Court's denial of Lunsford's habeas petition.

## I.[4]

Under AEDPA, we review state court decisions adjudicating post-conviction relief claims for reasonableness—we will not grant a writ of habeas corpus if the state court's

---

[1] *Perry v. New Hampshire*, 565 U.S. 228, 233 (2012).
[2] *See* Third Circuit Task Force, *2019 Report on Eyewitness Identifications*, 92 TEMPLE L. REV. 1, 16 (2019).
[3]  Pub. L. No. 104-132, 110 Stat. 1214 (1996).
[4] The District Court had jurisdiction under 28 U.S.C. § 2254. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253.

application of federal law was reasonable.[5] A state court decision is unreasonable only if it reaches a conclusion that is "beyond any possibility for fairminded disagreement."[6]

Further, when we review a state court's resolution of an ineffective assistance of counsel claim, our review is "doubly" deferential because the ineffective assistance standard proscribes only professionally unreasonable conduct and AEDPA authorizes habeas relief only when the state court's assessment of the reasonability of an attorney's performance is itself unreasonable.[7]

The scope of our review is limited to the "last reasoned [state court] decision" adjudicating the petitioner's habeas claims.[8] The New Jersey Superior Court was the only court to adjudicate Lunsford's claims on the merits. Accordingly, our review is limited to the Superior Court's reasons for denying Lunsford's due process and ineffective assistance of counsel claims.

The District Court did not hold an evidentiary hearing, so our review of the District Court's decision resolving Lunsford's petition for habeas relief is plenary.[9]

**II.**

---

[5] 28 U.S.C. § 2254(d)(1). We also may grant habeas relief when a state court decision is contrary to federal law, *id.*, but Lunsford does not raise such an argument here.

[6] *Shinn v. Kayer*, 592 U.S. 111, 118 (2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

[7] *Richter*, 562 U.S. at 105.

[8] *Abdul-Salaam v. Sec'y of Pa. Dep't of Corr.*, 895 F.3d 254, 265 (3d Cir. 2018) (quoting *Bond v. Beard*, 539 F.3d 256, 289–90 (3d Cir. 2008)).

[9] *Williams v. Superintendent Mahanoy SCI*, 45 F.4th 713, 719 (3d Cir. 2022).

For an ineffective assistance of counsel ("IAC") claim, a habeas petitioner must show not only that his/her attorney's performance was deficient but that the deficiency caused the petitioner prejudice.[10] An attorney's failure to move for suppression results in prejudice only if the motion would have been likely to succeed.[11] Accordingly, Lunsford cannot prevail on his IAC claim unless he first shows that his trial counsel would likely have succeeded in suppressing Keitt's identifications.

Lunsford argues that Keitt's in-court and out-of-court identifications should have been suppressed under the Due Process Clause. An in-court identification can be suppressed under the Due Process Clause only if it was influenced by a suppressible out-of-court identification.[12] The viability of each of Lunsford's claims, then, necessarily depends on whether his out-of-court identification was suppressible under the Due Process Clause.

An out-of-court identification can be suppressed under the Due Process Clause only if it was obtained under "unnecessarily suggestive" circumstances and is so

---

[10] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[11] *Thomas v. Varner*, 428 F.3d 491, 502 (3d Cir. 2005) (reasoning that a habeas petitioner is prejudiced by his trial counsel's failure to move for suppression only if the petitioner can "show that he would likely have prevailed on the suppression motion and that, having prevailed, there is a reasonable likelihood that he would not have been convicted").

[12] *Simmons v. United States*, 390 U.S. 377, 384 (1968) ("[C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.").

unreliable as to create a "substantial likelihood of misidentification."[13] But, as a threshold matter, suppression is appropriate only if the suggestive circumstances surrounding the identification were the result of state action.[14] The single question central to each of Lunsford's claims, then, is whether the police did anything sufficiently suggestive during Keitt's out-of-court photo array identification to warrant suppression.

Lunsford argues that the photo array procedure was suggestive in three ways. First, before showing Keitt the photo array, detectives asked Keitt questions that Lunsford characterizes as leading and confidence-boosting. Second, when Keitt paused while looking at Lunsford's photo during the photo array, the detective showing Keitt the photographs asked him: "[D]o you recognize this individual?"[15] Third, in the array, detectives used a year-old photo of Lunsford that was more consistent with Keitt's description of the shooter than later photos of Lunsford would have been.

The difficulty with Lunsford's first argument is that the pre-array questions were not before the New Jersey Superior Court when it adjudicated Lunsford's IAC claim. The

---

[13] *Neil v. Biggers*, 409 U.S. 188, 198 (1972).

[14] *Perry*, 565 U.S. at 248 ("[T]he Due Process Clause does not require a preliminary judicial inquiry into the reliability of an eyewitness identification when the identification was not procured under unnecessarily suggestive circumstances arranged by law enforcement.").

[15] App. 1004. A transcript of the Keitt's identification interview reveals that the detective actually said, "[Y]ou recognize him?" But, as discussed below, this transcript was not part of the record that was before the Superior Court, so we may not consider its contents. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."). Accordingly, our analysis relies on the testimony the detective provided at trial, which paraphrases what the detective said to Keitt during the photo array.

transcript reflecting those questions was never moved into evidence and was not, therefore, included in the record on appeal. Because the Superior Court did not have an opportunity to consider the pre-array questions when it adjudicated Lunsford's IAC claim, AEDPA prohibits us from considering those questions as well.[16]

We may consider Lunsford's second argument, but we ultimately find it unavailing. Certainly, when an officer administering an identification procedure asks a witness whether the witness recognizes a specific individual, the witness may understand the question as a suggestion that the witness *should* recognize the individual, which could wrongly cause the witness to gain confidence that the individual is the culprit.[17] But in this case, Keitt could not reasonably have viewed the detective's question as suggestive for two reasons. First, the detective administering the photo array was blind to the suspect's identity. And second, Keitt was *specifically informed* that the detective administering the photo array was blind to the suspect's identity.

"[O]ne of the most important system variables that law enforcement can control is the blinding of the identification procedures."[18] Blinding ensures that the officer

---

[16] *Pinholster*, 563 U.S. at 181. Even if we could consider the pre-array questions, they would not change the result of our analysis for the simple reason that the pre-array questions were not suggestive. Rather than suggest answers, these questions merely reiterated and confirmed answers Keitt had given earlier in the interview, and we see nothing in the context surrounding these questions that would transform them from summaries into suggestions.

[17] *Cf. Dennis v. Sec'y, Pa. Dep't of Corr.*, 834 F.3d 263, 326 (3d Cir. 2016) (McKee, C.J., concurring) ("[W]hen investigators give cues that suggest 'you got the right guy,' the witness'[s] confidence in the identification is artificially inflated.").

[18] *Dennis*, 834 F.3d at 321 (McKee, C.J., concurring).

7

conducting the photo array does not know when the witness is viewing the suspect's photograph, which in turn ensures that the officer cannot give "conscious or unconscious cues" that would affect the witness's identification.[19] Here, the photo array was conducted blindly because it was conducted by a detective who had not been involved in the investigation and did not know the suspect's identity. Since it is uncontested that the detective did not know who the suspect was, we have no reason to believe that he intended his question to suggest that Lunsford was the suspect, and it is unlikely that he gave any other conscious or unconscious cues suggesting that Lunsford was the suspect.

Of course, a witness could still *perceive* a suggestive cue even where none was intended if the witness incorrectly assumes the officer administering the array knows who the suspect is and then reads unintended meanings into the officer's behavior. But it is improbable that Keitt would have developed such a perception here because the detective conducting the photo array specifically told Keitt, "I do not know whom the suspect is, if he or she are in the lineup or what photograph he or she may be, if present."[20]

We do not suggest that blinding and instructing will cure every identification procedure of suggestiveness—one could imagine circumstances that would render these procedural safeguards null formalities. But we see no reason to believe these safeguards were ineffective in this case.

---

[19] *Id.*
[20] App. 1002, 136:17–19.

As for Lunsford's third argument about the photo of him that was included in the array—we find it unlikely that this photo was suggestive. Lunsford argues that this photograph was suggestive because it showed Lunsford to be beardless, which roughly matched Keitt's description of the shooter, even though photographs of Lunsford taken closer to the date of the shooting showed that Lunsford then had a short beard. But the most important consideration in photo array construction is to ensure that "the fillers' appearances should not make the suspect stand out."[21] Here, *all* of the photographs included in the photo array showed beardless individuals. It is therefore unlikely that Lunsford's photo stood out. And to the extent Lunsford's photograph remained suggestive despite its similarity to the fillers, that suggestiveness was also ameliorated by the instructions, which cautioned, "Please keep in mind that hairstyles, beards and mustaches are easily changed."[22]

In sum, we see little basis to conclude that the state's procedure for obtaining Keitt's identification was suggestive. Certainly, we cannot say that it was *unreasonable* for the Superior Court to conclude that there was insufficient state-created suggestiveness to warrant suppression.

The remainder of Lunsford's arguments pertain to the unreliability of Keitt's identification. We are sympathetic to Lunsford's arguments, as there were *many* reasons to doubt the reliability of Keitt's identification. For example, Keitt saw the shooter for

---

[21] *Dennis*, 834 F.3d at 325 (McKee, C.J., concurring).
[22] App. 1002, 136:11–12.

only a few seconds while also staring down the barrel of a gun. Keitt had never previously seen the shooter. And Keitt had strong motives to appear helpful to the police investigation regardless of his actual ability to identify the shooter. But under the Supreme Court's decision in *Perry*, the unreliability of Keitt's identifications, absent evidence of state-created suggestiveness, simply does not provide a basis for suppression.[23]

### III.

For these reasons, although we are not unsympathetic to Lunsford's claim that the identifications by Keitt were unreliable, we must affirm the District Court's order denying Lunsford's habeas petition.

---

[23] *Perry*, 565 U.S. at 248; *see also Johnson v. Rosemeyer*, 117 F.3d 104, 109 (3d Cir. 1997) ("The federal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." (quoting *Geschwendt v. Ryan,* 967 F.2d 877, 888–89 (3d Cir. 1992)).